COOK *v.* BANKS, guardian.

1. Although the act of December 18, 1893 (Acts of 1893, p. 52), provides "that the bill of exceptions in any case, or the certificate thereto, may be amended at any time before the final argument thereon in the Supreme Court, so as to make such bill of exceptions or certificate conform to the truth of the case and the forms of law," yet as this act does not declare whether the amendments to which it refers are to be allowed by order of the trial judge or of this court, and does not in any manner point out how such amendments are to be made, or provide for any procedure in the premises, or for service on the opposite party, the act, in view of these defects and omissions, is, as to the matter of such amendments, too imperfect and incomplete for practical enforcement.

2. There was no error in refusing the request to charge; the charge complained of, though not entirely free from verbal inaccuracy, taken in connection with the whole charge, submitted substantially the doctrine announced by this court in *Estes* v. *Odom*, 91

*Ga.* 600; the evidence warranted the verdict, and there was no error in refusing a new trial.

December 21, 1894.

Action on note. Before Judge CLARK. Newton superior court. March term, 1894.

1. One of the grounds of the motion for a new trial alleged that the court erred in allowing Bagby, a witness for the plaintiff, over objections of defendant's counsel, to testify in manner stated. This ground set forth the testimony objected to, but did not show what ground of objection was presented to and ruled on by the court below. The bill of exceptions assigned error upon the overruling of the motion for a new trial. When the case came on to be argued in the Supreme Court, counsel for plaintiff in error moved to amend the bill of exceptions, by filing with the record a written statement setting forth the ground of objection which was made in the court below to the admission of the testimony of Bagby; which statement or amendment had been certified as true by the trial judge, some months after the filing of the bill of exceptions and transcript of record in the Supreme Court.

2. The motion for new trial contained also the grounds stated in the opinion, and alleged that the verdict was contrary to law and evidence. It appears from a written memorandum signed by Banks and Cook, that in November, 1889, Cook bought of Banks "his home place, being his entire tract, being about six hundred acres more or less," together with three mules and a wagon, for $5,000, of which the sum of $2,000 was paid in cash, and for the balance three notes for $1,000 each were given, due on the first day of January, 1891, 1892 and 1893, bearing interest at eight per cent. A month after the date of the contract of sale, Banks executed to Cook a bond for title, in which the boundaries of the land are given (one of these being a public road, the

other three being lands of several named persons); said description being followed by these words: "said tract of land sold by the tract, containing six hundred acres more or less." Defendant thereupon went into possession. Two of the notes were paid, and this suit was brought upon the third (which was in possession of defendant and was produced by him under notice) by the wife of Banks as his guardian, he having been adjudged insane upon proceedings begun after January 1, 1893. According to the testimony for plaintiff, Banks became very feeble in body and mind in the latter part of 1890, and continued to grow worse until he was sent to the lunatic asylum; and he was incapable of attending to any business, though the plaintiff, having the notes in her possession, gave them to him when due, to collect the money. He was capable of trading in 1889. It was admitted that a credit of $60, dated December 23, 1892, should go upon the note sued on. One Clark testified, that on the date last named, Banks and Cook had a transaction in his office; that Cook offered Banks some money at that time, and called Clark's attention to it. Clark did not know the amount, but thought it was between $100 and $200. The money was obtained from Clark by Cook to pay off the Banks matter, and the amount loaned went to pay the amount Banks was due the bank so far as it would. Cook did not apply to Clark for the money to pay the note sued on, and Clark did not know how Cook got possession of the note.

For defendant J. T. Cook testified: I was a witness to the trade. The land is in Newton county, about two miles south of Covington. The conversation occurred on the place, defendant having asked me to go with him to look at the land. Banks showed it to us. We did not go over all of it. He said several times that there were six hundred or more acres of the land. After looking at the land and talking with me about the mat-

ter, defendant offered Banks $8 per acre for the land, provided he would throw in a wagon and three mules. After deliberating over the offer, Banks said he did not think that was altogether what the land was worth, and he preferred that he would make him an offer, so that he would not have to go to the trouble and expense of surveying the land; that he would guarantee there were six hundred acres of the land. After again talking with me, defendant offered Banks $5,000 for the land, provided he would throw in the wagon and mules and guarantee that there were six hundred acres. Banks told him he would let him know the next morning whether he would accept the offer. He carried us across the house half of the place; then we walked across the west end, and then back across the upper half of the place. Occasionally he could show us about where the boundary was, but we did not see all of the boundary lines. He said time and again that there were six hundred acres or more of the land. The next day he and defendant called me into the office of J. P. Harris, telling me that they had closed the trade. Banks told me he had taken defendant up at his last offer. They wanted me to witness the trade. When the contract was read over, defendant spoke of its describing the land as six hundred acres more or less, and said that might be all right, but that it was to be six hundred acres. It was then remarked by either Banks or Harris, that the expression "more or less" was just a common term used in describing land.

It further appeared for defendant, that in November, 1891, a careful and correct survey of the land was made by the county surveyor. Banks, defendant and others were present. Banks pointed out the lines, which were known to several others, the surveyor himself having previously been somewhat familiar with the land. This survey showed that the tract contained only 471 acres. One of those present asked Banks how he sold the land,

and he replied he sold it for 600 acres more or less.   He had lived on the place continuously for over twenty-five years before he sold it.    Defendant had lived about four miles north of Covington.

Plaintiff put in evidence a deed conveying to Banks a tract of land "containing seven hundred acres more or less," bounded on one side by a public road and on the other three sides by lands of certain named persons; dated in 1863 and recorded in 1864.   This tract covers the land in question.    Before the sale to defendant, Banks had given to his son a piece which he thought was between 90 and 100 acres, from this tract.   This piece was all he parted with.   Bagby testified (over objection): "I think what Banks sold to Cook is worth $5,000.   I think it was worth $10 per acre.   .   .   The improvements on the place are additional; it has a good house and barn and a gin-house on it; the place is worth $10 per acre without the improvements;   .   .   they were worth, at the time of this trade, at least $1,800 or $2,000."   J. P. Harris testified, that he never heard a word of complaint by defendant or Banks about the words "more or less" in the contract of sale not representing the trade between them, except from the testimony of J. T. Cook.   Witness drew both the contract of sale and the bond for title, at the instance of Banks and defendant.   Both were present and told him what the trade was, and he put it down as they told him.   He did not put the mules and wagon in the bond, because he did not think it was necessary.   He did not say the words "more or less" were all right—that the expression was just a common term; and did not think Banks so said.

The verdict was for the amount claimed by plaintiff.

JAMES M. PACE, for plaintiff in error.
EMMETT WOMACK, contra.

Lumpkin, Justice.

1. We are cheerfully willing to give due and conscientious obedience to the enactments of the General Assembly with reference to proceedings and practice in this court. While we honestly think there has been in some instances legislation too favorable to incompetent or negligent practitioners of the law, we are not inclined to question the authority of the lawmaking power to take care of those who either cannot or will not take proper care of themselves, nor do we wish to be understood as protesting against the exercise of such authority. After all, we have little doubt that the real purpose of the General Assembly in so legislating has been to guard the rights of parties, and not merely to shield delinquent attorneys from the consequences of their professional sins of omission or commission. In the spirit above indicated, we have faithfully endeavored to find a way to practically enforce that portion of the act of December 18th, 1893, which is quoted in the head-note, but have been unable to do so. The difficulties in the way are pointed out in the head-note itself, and are so obvious as to be apparent at a mere glance. If the General Assembly will indicate even loosely how bills of exceptions are to be amended, and define some sort of procedure for accomplishing this purpose, we will carry out their wishes to the best of our ability.

2. This was an action upon a promissory note given to Banks by Cook for the purchase of land. The defense was, in substance, that the land was sold by the tract, and was described in the bond for titles given to the defendant as containing 600 acres, "more or less"; that the seller had falsely and fraudulently, or through mistake amounting to fraud, represented to the defendant that the tract did in fact contain 600 acres, but upon subsequent careful and accurate survey, it was found to contain only 471 acres. The court was requested to

charge: "If you believe from the evidence that Cook did not have equal opportunity with Banks to judge of the number of acres, and Banks misrepresented to Cook the number of acres by mistake and innocently, and Cook acted on said misrepresentation to his detriment, Cook would be entitled to apportionment of price, to be measured by the deficiency, if deficiency be shown, and was gross." This request was properly refused. Its vice was that it assumed that the deficiency in question would, as matter of law, absolutely entitle the defendant to an abatement in the price, although there was no actual fraud perpetrated by the seller, and although the deficiency may not have been "*so* gross as to justify the suspicion of willful deception or mistake amounting to fraud." See Code, §2642. The deficiency was, in the present case, very large. We do not mean to say that the jury would not, as matter of fact, in view of the entire evidence, have been authorized to find that it was sufficiently large to authorize an apportionment in the price, under the provisions of the section above cited; but whether or not they should so find was a question for them, upon which the court rightly declined to pass.

Further complaint was made because of the following charges to the jury: (1) "Now, you have the case before you; and in the first place, you will determine whether the deficiency is so gross as to justify the suspicion of willful deception, or mistake amounting to fraud. Consider the property, the number of acres, the improvements upon the property, and all the circumstances connected with the sale." (2) "You will observe that the law is: in any deficiency in land so gross as to justify the suspicion of willful deception, you must have, in the first place, in order to find for the defendant, the suspicion of willful deception; and in order to arrive at that conclusion, you will get all the language of the bond for titles and the language of the contract previ-

ously entered into and which was consummated by the bond for titles, and all the circumstances, as I said, in connection with the case. But our Supreme Court has said, in a recent decision, that even this is not sufficient to have a deduction on account of the deficiency—not even that of the suspicion merely of willful deception or mistake amounting to fraud; that that is not sufficient; but it also says that if you have that suspicion of willful deception or mistake amounting to fraud, that then you must come to the conclusion as to whether there was fraud by willful deception or mistake amounting to fraud practiced by Mr. Banks upon the defendant Cook; and if you come to that conclusion, he would then be entitled to deduction *pro rata* of the number of acres which the tract of land has fallen short."

We confess that these instructions, taken by themselves, are not perfectly clear nor free from verbal inaccuracy. It is evident, however, that the judge was endeavoring to state to the jury the doctrine laid down by this court, through Chief Justice BLECKLEY, in *Estes* v. *Odom*, 91 *Ga.* 600; and taking these isolated and fragmentary extracts in connection with the whole charge, we cannot but reach the conclusion that the judge's purpose was substantially accomplished.

We think there was sufficient evidence to warrant the finding in the plaintiff's favor; and on the whole, have concluded to allow the verdict to stand.

*Judgment reversed.*